**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| BOBBY RAY KING, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 04-221-DCR |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MCCREARY COUNTY JAIL, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Defendants' motion for summary judgment. The issues have now been fully briefed and are ripe for review. For the reasons which follow, the Court will grant the Defendants' motion.

<u>BACKGROUND</u>

On May 19, 2004, Bobby King, an individual incarcerated in the McCreary County Jail, filed a *pro se* civil rights action pursuant to 42 U.S.C. §1983. King named three defendants in his Complaint. He alleged that the defendants' continuing failure to provide him with a doctor's appointment and his prescribed medications constitute neglect (which the Court construed as a claim of negligence) and amounts to cruel and unusual punishment (which was construed as an Eighth Amendment claim). King seeks injunctive relief and monetary damages.

Upon screening, this Court granted King's motion to proceed *in forma pauperis* and summarized his allegations in the following manner:

-1-

[T]he plaintiff alleges that he has chronic hepatis C and TB, for which he was taking doctor-prescribed medications. However, for the past 8 months he has repeatedly asked to be taken to see a doctor to see if they are active conditions and has also asked for the medications, and these requests have purportedly been denied. Eventually, the plaintiff alleges, the defendant jailer agreed to giving him the medication, but only if he paid for it; and once the medications were paid for, the defendant deputy jailer purportedly took them himself or sold them to other inmates.

The plaintiff states that both of the individual defendants have told him that they can do anything to him "and nobody will or can stop them." Further, he alleges that the jail has a grievance procedure, which he used to try to obtain a doctor's visit for the hepatis C and TB conditions, but the responses were threats and being told "not to ask or I would go to hole and stay."

For relief, the plaintiff seeks an immediate trip to a doctor for treatment for his liver and lungs; an order requiring that he be put back on his medications; and damages, specifically, "make them pay for all the damage done/being done to my body and mind."

[*See* Record No. 4 at 2-3.]   The Court also noted that King claimed to have used the administrative remedy process in oral and written form, but his requests had been repeatedly denied by jail officials.   More specifically, King identified the jailer and his deputy as responsible parties.

After concluding that King's federal complaint was not frivolous on its face and that he may have followed the jail's administrative remedy process to completion, the Court dismissed the jail as a defendant and directed that summons issue for the named individuals (Scott Jones and Greg Heath) in their individual capacities.

The Defendants filed an Answer.  Thereafter, in July of 2004, the matter was referred to Magistrate Judge J. B. Johnson, Jr., for pre-trial management.  After the time for court-ordered discovery had expired (December of 2004), Magistrate Judge Johnson directed King to submit

a pre-trial memorandum.  He also Ordered the Defendants to submit a responsive pre-trial memorandum or file a dispositive motion thirty days after the submission of King's memorandum.   King filed two identical memoranda [Record Nos. 18 and 21] containing additional factual allegations.  On March 31, 2005, the Defendants responded by filing the summary judgment motion that is now pending for review.

<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

The Defendants' motion for summary judgment and attached memorandum begin a factual summary.  As reflected by the supporting affidavit from the defendant Jailer, they contend that King's medical needs were properly treated during and after his term of incarceration in McCreary County.  (He was later moved to the Whitley County detention center, apparently as a result of the present litigation.)  Jailer Jones attaches to his affidavit Exhibits A - N which represent numerous records from the jail regarding the Plaintiff's doctor visits; medical records; prescription drug consumption; admission and release evaluations of his health; and medical bills paid by the jail for the Plaintiff's doctor visits and prescriptions.

The Defendants argue that King's health complaints were vague and inconsistent throughout his stay at the jail.  They contend that he complained at various times of a number of medical conditions, including  hepatitis, tuberculosis, back pain, and nerves.  Pointing to the exhibits showing regular, on-going medical attention to his complaints, they insist that there is no evidence in the jail records that King's alleged conditions were serious from a medical standpoint or that the Defendants were made aware of any serious medical need and knowingly

denied him appropriate attention.  Thus, they contend that he cannot establish an Eighth Amendment violation.

The Defendants analogize King's situation, factually and legally, to that of the prisoner-plaintiff in *Napier v. Madison County, Kentucky*, 238 F.3d 739 (6th Cir. 2001), who sued under the Eighth Amendment but could point to no injury flowing from the purported inattention.  As to the construed negligence claim, the Defendants argue that King has not stated a claim under Kentucky law because his factual allegations concern willful mistreatment.  Further, they contend that he has failed to establish any breach of duty resulting in injury or harm.

<u>Response</u>

In his response to the Defendants' motion [Record No. 24], King counters each of the Defendants' exhibits with his version of events.  Further, he claims that he has never seen many of the exhibits and with regard to his signature which appears on many of them, he contends that he would sign documents which were presented to him by jail personnel without reading them.

King also insists that the Defendants' exhibits support his allegations.  Specifically, he argues that (1) it was three weeks before he saw a doctor for the first time; (2) two months passed before he got pain medication; (3) it took from September of 2003 to April 3, 2004, to obtain the blood tests he sought; and (4) he routinely ran-out of medications early.  He alleges that his medications ran-out well before others taking the same substances, and he again suggests that Defendant Heath was stealing them or otherwise diverting them from being any benefit to him.

King points out that he did not allege that he did not receive any medical attention, but that  he was denied *proper* medical care.  Further, he states that he will prove this claim when

he puts the Defendants and doctors are required to testify.  King again submits the 7-page memorandum which he presented earlier.  [Record Nos. 18, 21][1] King has also attached a handwritten note indicating that he has been seeing a psychiatrist "for this matter and they say I will need a undetermined amount of thearapy [sic]."  [*See* Record No 24, attached memorandum at 8.]

King also states in his handwritten memo that he "ran out of medication" the day before his incarceration.  Upon entry at the jail, he purportedly asked both of the Defendants for a refill. He claims that the Defendants initially laughed at him.  Their laughter later turned to anger, with the Defendants allegedly demanding $35 for a doctor visit and $10 for a prescription. Approximately two weeks later, with financial help from friends in the jail, King saw a doctor who allegedly observed the Defendants' denying him any refills.  King claims that Defendant Jones stated that the Plaintiff was "faking" his need.  Allegedly, the jailer also explained that other inmates who were able to obtain medications were "friends."  Both Defendants purportedly threatened the Plaintiff with going "to the hole," if he did not shut up.

According to this document, it was a month-and-a-half later (and after the Plaintiff's father talked with the county judge executive several times) before King began to receive his "regular meds."  However, he still did not get an appointment with a liver specialist, despite telling Defendant Jones how sick he was, including complaints of: night sweats, vomiting blood,

---

[1]     The version appearing at Record No. 21 has an extra page attached.  In it, King alleges that, as a result of being denied proper medical treatment, he has suffered both physically and mentally.  He claims to have "sustained serious liver and nerve damage . . .  [and] will have to see a psychiatrist and a liver specialist for an undetermined amount of time."  He demands that Defendants Jones and Heath pay his past and future medical bills as well as $2,100,000.00 "for their lack of professionalism and for being inhumane . . . ."  *Id.*

"hurting in my liver swelling Etc."  Also, King and other inmates began to run short on pain and nerve pills.  In the presence of the doctor, the Defendants purportedly explained that they were "cutting everyone out and off their pain and nerve medicine."  When other inmates continued to get their refills and the Plaintiff did not, however, he asked Defendant Heath about it.  Heath allegedly threatened him with mace and a stay in the hole; upon questioning Defendant Jones, he was threatened with the hole and a beating.  "I was still very sick so I kept quiet."  *Id.* at 5.

King further states that when he got up the courage to file the instant lawsuit, Jones stopped his mail and Heath made more threats, including threatening him with planting something on him and later telling him that if he did not sign statements saying that he had lied about everything, "he would see to it that I would not live a week."  The morning after telling his father that he was very afraid, the Plaintiff was moved to the Whitley County Jail.

### Defendants' Reply

The Defendants maintain that a non-movant such as King may not rest on allegations or claims that at trial he will rebut the evidence offered supporting a motion for summary judgment.  They contend that King has failed to present any affidavits or records showing any delay or denial of his medical care.  Further, however, the Defendants argue that even if King's allegations are accepted as true, they are insufficient to overcome summary judgment with respect to his claims of negligence and violations of the Eighth Amendment.

### ADDITIONAL MOTION

King has also filed a two-page sur-reply [Record No. 26], insisting that he has submitted sufficient evidence to overcome summary judgment.  More specifically, he points to a

supporting, but unverified, statement from his father confirming certain allegations.  His father's statement dated May 4, 2005, indicates that on several occasions King's father tried to get his son's medication "straightened out," but was told only that the Defendants would see what they could so.  King also alleges that his father talked with Defendant Jones about getting medical attention for his son's hepatitis C, but was told that it was not his (*i.e.*, Jones') responsibility.  Further, the father states that he visited King several occasions and observed that he was very sick.  He states that he contacted the county judge executive but did not receive assistance with the problems.

King also asks for subpoenas for medical and drug store records to prove that the Defendants are not paying all of his medical bills in the Whitley County Jail.  He claims that he does not feel he can get a fair and just hearing unless this information is provided.

The Defendants have responded to the Plaintiff's sur-reply with a motion to strike the pleading.  [Record No. 27]  They point out that this pleading is not permitted without leave of Court, which the Plaintiff did not obtain.  They correctly cite to Local Rule 7.1(d) in support of their position.  King, in turn, has filed a response [Record No. 28], seeking leave to obtain the subpoenas and repeating his belief that he cannot receive a fair trial unless the requested information is obtained.  The Defendants claim that this response is not germane to the issues raised by the motion.

<u>DISCUSSION</u>

The Court will not require strict compliance by the *pro se* litigant under the facts presented.  Instead, the Court will deny the motion to strike the Plaintiff's late-filed response,

so as to consider the entire record, including all available documents and written statements of position, before ruling on the pending motion for summary judgment. However, the Court will not grant King's request to have subpoenas issued as the time has passed for the marshaling his proof.

### Standard for Summary Judgment

In determining whether summary judgment is appropriate, the Court must first determine whether there are any genuine issues material fact. If no such issues are presented, the Court must consider whether the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). As to the first issue, the Supreme Court has directed trial courts to look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

The moving party has the burden of showing there is an absence of evidence to support a claim. *Celotex*, 477 U.S. at 324-25. After a moving party carries its burden, the non-moving party must go beyond the pleadings to designate by affidavits, depositions, answers to

interrogatories, and admissions on file, specific facts showing that there is a genuine issue of material fact for trial. *Id.* If the non-movant completely fails to prove an essential element of his or her case, then all other facts are immaterial. *Id.* at 322-23.

The District Court will examine the movants' motion to ensure that he has discharged his burden. *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). Here, in examining whether the Defendants have met their burden, the Court will draw all justifiable inferences from the evidence presented in the light most favorable to King. *Woythal v. Tex-Tenn Corp.,* 112 F.3d 243, 245 (6th Cir.), *cert. denied,* 522 U.S. 967, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). The Court also notes that the Sixth Circuit accepts a verified complaint, to the extent that it is based on personal knowledge, as an opposing affidavit within the meaning of Fed.R.Civ.P. 56(e). *See Hooks v. Hooks*, 771 F.2d 935, 945-46 (6th Cir. 1985).

<u>Application of Standards to Defendants' Motion for Summary Judgment</u>

This case might be characterized as a classic swearing contest. While pointing to the same exhibits, the Defendants contend that they have established that King was "given substantial and ongoing medications and treatment." [Record No. 23] And while King admits he may have received the medical attention recorded, he claims that the Defendants did not give him *sufficient* care to constitute "*proper* medical treatment" [Record No. 24]. This stand-off, however, does not require jury resolution.

The Plaintiff filed a claim that his Eighth Amendment rights were violated for a ten-month period (July 2003 until May 19, 2004) because the Defendants displayed deliberate indifference to his serious medical needs. The Supreme Court has held that "[i]n order to state

a cognizable claim [under the Eighth Amendment with regard to medical care] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Therefore, a prisoner must show both "deliberate indifference" and "serious medical needs."  *Id.*  The proper analysis for such an Eighth Amendment claim has been restated in this circuit as follows:

> The Supreme Court recently clarified this inquiry, noting that the deliberate indifference standard contains both an objective component (was the deprivation sufficiently serious?) and a subjective component (did the officials act with a sufficiently culpable state of mind?).  *Wilson v. Seiter*, 115 L. Ed. 2d 271, 279 (1991).

*Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

For a medical need to be shown to be serious, it must require immediate medical attention.  *Id.*  Alternatively, it must be a condition which was "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).  And in attempting to determine whether the second component has been met, it must be determined whether the defendant officials acted with a sufficiently culpable state of mind.  *Id.* (citing *Wilson v. Seiter*, 115 L. Ed. 2d 271, 279 (1991)).

With respect to the first component (the seriousness of the Plaintiff's medial conditions), the Court concludes that King's complaints were and remain vague and varied.  After examining the entire record – including the Defendants' exhibits – the Court finds no information about the Plaintiff's alleged liver condition, including whether he has ever been diagnosed or treated for hepatitis C.  See Exhibit C ["Ex."].  King also complained of problems relating to his ears,

stomach, back pain, and "nerves" in conclusory fashion.  Again, however, he has not provided information establishing a serious medical problem regarding these complaints.

The Plaintiff's three medical interviews in which he has responded to a question about having seen a doctor recently about any conditions, reveal that he gave little information to the jailers initially or later in his stay.  He responded only about nerves and back on the first interview; mentioned nothing at all one time; and listed "TB, hepatitis head" only once with this final time being after he filed the instant complaint and he was removed from the McCreary County facility. [Ex. F-H]

The same exhibits constitute the only evidence of the jailers' response.  The jail paid for doctor visits for the Plaintiff 8 times in 8 months (September 16, 2003, to May 20, 2004). Ex. K.  King received and signed for his medications daily, although these records also show that he ran out of his prescriptions several times and had to await refills.  Ex. D.  King complains of waiting until April for the blood tests he desired, but he admits that he ultimately received them. Of the 10 drug store invoices for King's prescriptions, several are for multiple prescriptions (one represents six prescriptions filled on January 8, 2004).  In reviewing this evidence in light of an alleged constitutional violation, this Court must determine whether the medical treatment at issue is so grossly incompetent, inadequate, or excessive that it "shocks the conscience" or is "intolerable to fundamental fairness." *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002).

Where, as here, a prisoner has received some medical attention and the dispute is over adequacy of treatment, federal courts are reluctant to "second guess" medical judgments.

-11-

*Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also Birrell v. Brown*, 867 F.2d 956, 958 (6th Cir. 1989). Here, King only states that not getting his drugs made him "sick." However, there is no evidence of what this means or how often this happened. *See Sivak v. Murphy*, 995 F.2d 233, 1993 WL 188334 (9th Cir. 1993) (unpublished) (affirming grant of summary judgment to all defendants because the prisoner's medical conditions were not serious; they "may have been painful, but they were not serious threats to his long term health. The short periods without treatment do not equate with a deprivation of constitutional rights.").

Even if King has hepatitis C, the condition is not *necessarily* serious. In assessing the objective portion of the Eighth Amendment question, courts have found those without active hepatitis C did not present a serious medical need. *Vondette v. McDonald*, 2001 WL 1551152 (S.D.N.Y. 2001). However, in other cases, individuals suffering from an advanced stage of the disease (including cirrhosis of the liver) have been held to meet the standard of having a serious medical need. *McKenna v. Wright*, 2002 WL 338375 (S.D.N.Y. 2002).

Even assuming the ultimate risk of hepatitis C to King to be serious, however, the Court finds that King has failed to present evidence that the Defendants knew of a serious threat to his health and were deliberately indifferent to it. The evidence of record demonstrates that the Defendants routinely maintained the status quo. King allowed himself to run out of a prescription on the day before being jailed but upon his continued incarceration, his refill was delayed but finally provided. King's "dissatisfaction with his medical care at [the prison] does not prove that the defendants acted with deliberate indifference." *Wesley v Vaughn*, 2002 WL 1286898 (E.D.Pa. 2002) (not reported) at *2.

-12-

Thus, although there are factual disputes concerning what was said, by whom, when, and to what end, King has presented no evidence establishing a constitutional violation.  The burden is on King to establish: the seriousness of his condition(s); the jailers' knowledge of the seriousness, any risk of serious harm without medical attention; and their deliberate indifference to the harm or risk of harm.  *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  He has utterly failed to provide evidence of these elements.

This failure of proof is most evident in the area of medical information.  As the named Defendants have noted, if a plaintiff complains of a defendant's delay in providing medical treatment, he must put medical evidence in the record about the detrimental effect of the delay, under *Napier v. Madison County*, 238 F.3d 739 (6th Cir. 2001).  In *Napier*, the plaintiff had complained that he missed dialysis while confined, and yet he had missed it many times prior to being incarcerated.  Following the lead of other circuits, the Sixth Circuit has held that "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed."  *Id.* at 742.

*Napier* is controlling in this case.  Where, as here, there is no medical evidence of the deleterious effect of the delay in treatment in record, summary judgment is appropriate.  *See Bright v. Martin*, 37 Fed.Appx. 136, 138 (6th Cir.) (unpublished), *cert. denied*, 537 U.S. 956 (2002) (failure to provide evidence of detrimental effect of delay in treatment for liver condition); *Rumsey v. Martin*, 28 Fed.Appx. 500, 501-02 (6th Cir.) (unpublished), *cert. denied*, 537 U.S. 853) (same for asthma condition).  *See also Reid v. Sapp*, 84 Fed.Appx. 550, 552 (6th

Cir. 2004) (unpublished); *Jennings v. Al-Dabagh*, 97 Fed.Appx. 548, 550 (6th Cir. 2004) (unpublished). The lack of evidence of injury is also fatal to the plaintiff's supplemental state law claim of negligence. *See Capital Holding Corp. v. Bailey*, 873 S.W.2d 187 (Ky. 1994).

The time line is also relevant. In July of 2003, the Plaintiff named "nerves - back" as a recent problem for which he saw a doctor. He alleges that he endured the defendant jailers' denying him medical attention for months, such that he finally filed the instant lawsuit in May of 2004. After the filing, his complaints became more detailed (see Ex. H, the June of 2004 interview). However, he has submitted no evidence from that time to support his claim that the named Defendants were deliberately indifferent to his known, serious medical needs. After this action was instituted and King was moved to another jail, in July of 2004, the Magistrate Judge set October 20th as a deadline to complete discovery. However, King did not take any action. After the time for discovery had expired, on December 10, 2004, he was ordered to submit a pre-trial memorandum in 30 days – a deadline that was ultimately extended to March 10. Still, the Plaintiff garnered no evidence to support his claims.

King had almost one year in the McCreary County Jail – and more than a year after he filed this lawsuit – in which to obtain evidence in support of his claims. In short, his late-filed request for subpoenas simply comes too late. In theory, he should have had medical evidence more than a year ago, prior to filing a lawsuit dependant on medical testimony. In reality, however, he should have obtained it a year later, when discovery is closed and a motion for summary judgment was filed.

-14-

It must be remembered that the nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which he relies in overcoming a summary judgment motion. *Al-Qudhai'een v. America West Airlines, Inc.,* 267 F.Supp.2d 841, 845 (S.D.Ohio 2003) (citing *In re Morris,* 260 F.3d 654, 665 (6th Cir.2001)).  The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment.  *Reeves v. Fox Television Network,* 983 F.Supp. 703, 709 (N.D.Ohio 1997).

In this case, the Court finds that King has been afforded ample time for discovery but has failed to point to medical evidence to support his allegation that he has suffered an injury from the Defendants' delay in providing drugs or treatment.  Therefore, this Court will not permit his vague allegations to defeat the current motion for summary judgment.  *See Okoro v. Scibana,* 63 Fed.Appx. 182 (6th Cir. 2003) (unpublished) (affirming defendants' summary judgments because the parties had ample time to request discovery and the prisoner did not identify the information he would have sought or how the information would have improved his case); *see also Nelson v. Pascual*, 156 F.3d 1231 (6th Cir. 1998) (table) (finding ample time for discovery and citing *Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir. 1989)); *Ashmore v. Campbell*, 173 F.3d 854 (6th Cir. 1999) (table) (same).

In summary, the Defendants have carried their burden to show that there is an absence of evidence to support the claims against them (*Celotex Corp. v. Catrett*, 477 U.S. at 324-25).  Further, King has failed to carry his burden to present "affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 257.  "Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587. Such is the circumstances presented in this case.

"Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the non-moving party to make the showing . . . ." *Celotex Corp. v. Catrett*, 477 U.S. at 324. A plaintiff must employ proof other than his pleadings to establish the existence of specific triable facts. *Id.* King has presented none. Conclusory statements will not defeat a motion for summary judgment. *Matsushita,* 475 U.S. at 587. The Plaintiff has failed to go beyond the pleadings to designate facts showing that there is a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 248. Therefore, the Court will grant the Defendants' motion for summary judgment and dismiss King's claims.

In disposing of the claims raised in this case, the Court notes that it is troubled by the allegations of threats by the jailers. Although verbal abuse by officials is not condoned, the law is clear that verbal abuse by itself does not violate the Constitution. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Cumbey v. Meachum*, 684 F.2d 712 (10th Cir. 1981); *Franklin v. State of Oregon*, 662 F.2d 1337 (9th Cir. 1981); *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987). Mere vituperation or disparagement, no matter how repugnant, cannot amount to a violation of a federal constitutional right. *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.), *cert. denied*, 464 U.S. 998 (1983).

<u>CONCLUSION</u>

Having concluded that King has failed to establish a violation of constitutional rights and that summary judgment on his federal claim is appropriate, it is hereby

**ORDERED** as follows:

(1)      Defendants' motion to strike [Record No. 27] is **DENIED**;

(2)      Defendants' motion for summary judgment [Record No. 23] is **GRANTED**;

(3)      This action is hereby **DISMISSED**.  King's Eighth Amendment claim is hereby **DISMISSED**, with prejudice.   However, his state law claim of negligence shall be **DISMISSED**,  without prejudice.

(4)       A separate Judgment shall be entered this date.

This 24th day of June, 2005.



Signed By:

_**Danny C. Reeves**_

**United States District Judge**

-17-